## In re BARCIA.

### No. 40361.

District Court, E. D. New York.

Oct. 9, 1942.

Jacob Pesachowitz, of New York City, for bankrupt (for motion).

Krause, Hirsch & Levin, of New York City, for trustee (opposed).

BYERS, District Judge.

This is a motion to reverse an order of the Referee (based on his decision dated May 12, 1942) vacating his previous order of August 16, 1941, declaring Metropolitan Life Insurance Company Policy No. 3148934A to be an exempt asset.

Seemingly the later order also provided that the said policy is an asset of the bankrupt estate, and that the face amount, namely, $1,500, should be paid by the insurer to the trustee; and that the bankrupt and his wife were empowered to apply for any balance remaining in the hands of the trustee after the payment of the creditors' claims and the expenses of administration in bankruptcy; and the bankrupt and his wife were ordered and directed to do whatever might be necessary to carry the order into effect, and that they were enjoined from asserting any claims under the policy; and that, upon making the payment as directed, the insurer would be discharged of any liability arising under the said policy.

The policy was in form a 20-year endowment, dated August 27, 1921, and payable twenty years thereafter to the bankrupt "if the Insured be then living, or upon receipt * * * of due proof of the prior death of the Insured, to Anthony Barcia, brother, beneficiary".

It is asserted, but there is no proof offered to that effect, that in 1931 the bankrupt's wife (whom he had married in 1927) began paying the premiums on the policy; and that on May 7, 1935, the bankrupt changed the beneficiary named to the wife without reserving the right to change the beneficiary.

Six days thereafter, or on May 13, 1935, judgment was recovered by Conlew, Inc., against the bankrupt in the sum of $399.79, which has been the subject of a proof of claim in this proceeding.

The voluntary petition was filed on January 29, 1941, and a trustee was elected on May 19th of the same year. On August 16th the bankrupt obtained the ex parte order which was vacated as has been stated; that is to say, a motion was made by the trustee under date of August 23, 1941, and decision by the Referee ensued nearly nine months thereafter, as is shown by his order of May 29, 1942.

The policy contains the following provision in reference to assignment:

"4. Assignment:—No assignment of this Policy shall be binding upon the Company unless it be executed upon blanks furnished by the Company and filed with the Company at its Home Office in the City of New York. The Company assumes no responsibility as to the validity of any assignment." .

Apparently the bankrupt's wife was not listed as a creditor, either secured or otherwise, and the matters about to be referred to are embraced in affidavits sworn to by the bankrupt on September 6, 1941, and September 23, 1941, respectively, and by the bankrupt's wife, Anna, on September 6, 1941, and September 23, 1941. Taken together, they aver that the bankrupt's wife paid the premiums on the policy from 1931 onward, because the bankrupt was unable to do so, and that in 1935, at the time of the change of beneficiary, the bankrupt verbally assigned the policy to his wife, who thereafter continued to pay the premiums.

The Referee has viewed that transaction, if it took place, as in fraud of the creditor who became a judgment-creditor on May 13, 1935, and it would be difficult to reach a contrary conclusion.

Since this is not an ordinary life policy, the status of the beneficiary is contingent upon the death of the bankrupt within the 20-year period, and the survival of the beneficiary at that time, neither of which events occurred. When the policy became due and payable on August 27, 1941, the bankrupt was alive and, except for the intervention of bankruptcy, would have been entitled to receive the face value of the policy; that right passed to his trustee in bankruptcy, and it can be defeated only in part, if at all, by a showing that the wife has what might perhaps be construed to be an equitable lien to the extent that she kept the policy alive after 1931 by the payment of premiums from her own funds.

In order that the entire subject-matter may be made the subject of proof (and of course the burden lies upon the wife of establishing by convincing evidence that she did make such payments), the matter will be remitted to the Referee for the taking of testimony, in the event that under the Bankruptcy Law the wife has any claim which can be adjudged in the Bankruptcy Court.

It will be proper to take testimony on the subject of the alleged assignment, assuming that one could have been effectual and valid between the bankrupt and his wife, which would not have been binding upon the company according to the provisions above quoted.

These matters are important to a final determination of the entire controversy, and it is to be hoped that the matter can

be heard and determined in a very much shorter period of time than elapsed between the making of the trustee's motion to vacate the said motion, and the decision thereof—say 30 days.

Settle order.